## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

CHRISTOPHER JORDAN           :
McDANIEL,                    :
                            :
       Plaintiff,           :
                            :        CIVIL ACTION NO.
     v.                     :        2:11-CV-00165-RWS
                            :
DANIEL YEARWOOD, JR., *et*   :
*al.*,                       :
                            :
       Defendants.          :

## <u>ORDER</u>

     This case comes before the Court on Defendants Yearwood and Barrow

County, Georgia's ("Barrow County") Motion to Dismiss Complaint [4],

Defendant Smith's Motion to Dismiss Complaint [6], Defendant Harris's

Motion to Dismiss Complaint [8]; Defendant Barrow County's Motion to

Dismiss Amended Complaint [17], Defendant Smith's Motion to Dismiss

Amended Complaint [18], Defendant Harris's Motion to Dismiss Amended

Complaint [19]; Defendants  Smith, Arnold, Hunnicutt, Harris, and Barrow

County's Motion to Dismiss or in the Alternative Motion to Strike Plaintiff's

Second Amended Complaint [27]; and, finally, Plaintiff's Motion to Allow

Plaintiff to Amend His Complaint If This Court Find [sic] that Defendants'

Motions to Dismiss Have Any Merit ("Plaintiff's Motion for Leave to Amend")

[31].  After reviewing the Record in this case, the Court enters the following

Order.

## Background[1]

This case arises out of an arrest and beating that Plaintiff allegedly

sustained at the hands of two deputies of the Barrow County Sheriff's Office

(BCSO).  According to the allegations of the Amended Complaint, on June 7,

2009, at or about 1:00 a.m., Plaintiff was involved in a disturbance in Winder,

Georgia, which ultimately led to the arrival of Defendants Deputy Sheriff

Bradley Arnold ("Deputy Arnold") and Deputy Sheriff Shayne Hunnicutt

("Deputy Hunnicutt") of the BCSO.  (Dkt. No. [10] ¶¶ 11-12, 20-25.)

Specifically, Plaintiff, upset over the recent death of his grandfather and break-

up with his girlfriend, fled his residence and the company of his friends and ran

onto the property of the McDaniel Concrete Company.  (Id. ¶¶ 20-21.)

Plaintiff's friends followed and, after catching up with him, wrestled Plaintiff to

the ground in an attempt to make him calm down.  (Id. ¶ 22.)  It appears from

---

[1] As the case is before the Court on a motion to dismiss, the facts alleged in the Amended Complaint are taken as true.  Cooper v. Pate, 378 U.S. 546, 546 (1964).

2

the Amended Complaint that at this point, Plaintiff was back on his own property.  Shortly thereafter, Plaintiff's parents arrived and were able to calm him down.  (Id. ¶ 23-24.)

A few minutes after Plaintiff had calmed down, Deputies Arnold and Hunnicutt arrived on the scene in a marked BCSO vehicle, with no lights flashing or siren blaring.  (Id. ¶ 25.)  The deputies drove their vehicle onto Plaintiff's lawn and parked a few feet away from where Plaintiff was lying on the ground.  (Id. ¶ 26.)  Deputy Arnold allegedly jumped out of his car, ran toward Plaintiff, and pushed Plaintiff's mother to the ground.  (Id. ¶ 27.)  Deputy Hunnicutt similarly pushed Plaintiff's father away from Plaintiff, nearly knocking him to the ground.  (Id.)  Deputy Hunnicutt then got on the ground next to Plaintiff and pinned Plaintiff to the ground.  (Id. ¶ 28.)  Thereafter, without warning or provocation, Deputy Arnold punched Plaintiff in the cheek just below Plaintiff's left eye.  (Id. ¶ 30.)  Deputy Arnold then knelt down next to Plaintiff and punched him again in the face two more times, smashing his left eye and causing it to immediately swell and clot.  (Id. ¶¶ 31-32.)

Following this alleged attack, Defendant Anthony Harris ("Defendant Harris"), then a Captain at the BCSO, arrived on the scene in his marked BCSO

3

vehicle.  (Id. ¶¶ 10, 34.)  Defendant Harris got out of his vehicle, withdrew his

taser gun, and ordered everyone away from Plaintiff.  (Id. ¶ 37.)  Without

ascertaining what had transpired, Defendant Harris loudly threatened to taser

Plaintiff if he did not get back down on the ground and threatened to taser

anyone near Plaintiff who did not move away.  (Id. ¶ 38.)  Plaintiff returned to a

lying-down position on the ground and was then handcuffed and "dragged to

and shoved" into the back of Deputy Arnold's vehicle.  (Id. ¶ 42.)  In response

to Plaintiff's mother's questions, Defendant Harris said Plaintiff would be taken

to a hospital.  (Id. ¶ 43.)

Plaintiff was driven to the back parking lot of the hospital.  (Id. ¶ 45.)  On

the orders of Defendant Barrow County Sheriff Judson K. Smith ("Sheriff

Smith"), who had arrived on the scene, Plaintiff remained in the back parking

lot for nearly two hours and was not permitted to be examined by hospital staff.

(Id. ¶¶ 5, 45.)  At some point, the deputies complained that Plaintiff was

bleeding all over the vehicle and that the vehicle would have to be cleaned.  (Id.

¶ 57.)  Despite the concerns of two on-duty EMTs, Plaintiff, and Plaintiff's

father, Sheriff Smith refused to allow Plaintiff to be treated; on the contrary,

Sheriff Smith "instructed Deputy Arnold to sign the 'Medical Refusal' form as

4

'guardian' for [Plaintiff]." (<u>Id.</u> ¶ 46.)  Despite his decision not to have Plaintiff

treated, Sheriff Smith told Plaintiff and Plaintiff's father, in the presence of

Defendant Harris, "By law, I am supposed to take [McDaniel] in [the Hospital]

and handcuffed to a hospital bed and have one of my deputies watch him all

night but I'm not, I'm taking him to Jail."  (<u>Id.</u> ¶ 47 (alterations in original).)

Plaintiff was thereafter taken to jail where he was booked and processed.

(<u>Id.</u> ¶ 48.)  At the jail, a deputy took pictures of Plaintiff's face and "those

around" laughed about the picture and exchanged "high fives."  (<u>Id.</u> ¶ 58.)

Plaintiff was charged with obstruction of an officer, disorderly conduct, and

public drunkenness.  (<u>Id.</u> ¶ 51.)  An order of <u>nolle prosequi</u> was later entered as

to these charges in the Superior Court of Barrow County.  (<u>Id.</u> ¶ 51 n.14.)

Plaintiff alleges the following injuries as a result of the alleged beating:

> The savage beating . . . [caused] . . . [Plaintiff's] facial bones
> under his left eye to be shattered, his orbital socket to be displaced,
> his left eye to be nearly dislodged and his brain to be bruised and
> swollen; [and that] [Plaintiff] also suffered injuries to his
> shoulders, neck and back and he is still suffering with Post
> Traumatic Stress Disorder and mental and emotional anguish and
> loss of ability to concentrate and much of his agility and dexterity
> has been compromised and the prognosis for regaining same is
> poor, at best.

(<u>Id.</u> ¶ 53.)  Furthermore, Plaintiff alleges that as a result of these injuries,

> [Plaintiff] has suffered, in part, loss of full functioning of his left eye, loss of teeth, loss of feeling in the left side of his face, loss of ability to concentrate, loss of dexterity and agility, loss of hearing on left side, loss of ability to earn a living, loss of mental processing, loss of the ability to get a good night's sleep, nightmares and flash backs [*sic*] and loss of the quality of his life in general.

(Id. ¶ 61.)

Based on the foregoing factual allegations, Plaintiff brings the Amended Complaint against Defendants Deputies Arnold and Hunnicutt, Defendant Harris, Sheriff Smith, and Barrow County, alleging various violations of federal and state law.  Currently before the Court are the motions to dismiss of Defendants Barrow County, Sheriff Smith, and Defendant Harris.  With regard to Plaintiff's federal law claims, Plaintiff alleges that all three moving Defendants are liable under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Fourth and Eighth Amendments of the United States Constitution. Specifically, Plaintiff raises claims for unreasonable seizure and malicious prosecution in violation of the Fourth Amendment (Counts IX and XII),[2] and

---

[2] Plaintiff's claim for federal malicious prosecution is set out in a Count separate from his other Fourth Amendment claim and is not alleged to arise under the Fourth Amendment.  The claim, however, sounds in the Fourth Amendment.  Rehberg v. Paulk, 611 F.3d 828, 853 (11th Cir. 2010).

AO 72A
(Rev.8/82)

for denial of medical treatment under the Eighth Amendment (Count IX).

Plaintiff's state law claims against the moving Defendants are as follows: False Imprisonment and Kidnapping (all three Defendants) (Count I); Aggravated Battery, Aggravated Assault, and Assault and Battery (all three Defendants) (Count II); "GTCA, Negligence per se, Negligence and Gross Negligence" (Defendants Smith and Harris) (Count III); Gross Negligence (all three Defendants) (Count IV); Negligent Hiring, Retention, Training and/or Supervision and Entrustment (Defendants Barrow County and Smith) (Count V); Intentional Infliction of Emotional Distress (all three Defendants) (Count VII); and, finally, a claim under the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. § 16-14-1, *et seq* (all three Defendants) (Count X).[3]  Finally, Plaintiff makes clear that he is suing Sheriff Smith and Defendant Harris in their official and individual capacities.  (Am. Compl., Dkt. No. [10] ¶ 16.)

---

[3] Plaintiff also sets out as "Counts" of the Amended Complaint a request for punitive damages (Count VI) and litigation expenses for bad faith and stubborn litigiousness (Count VIII).  These are requests for relief, however, not "counts" setting forth Plaintiff's legal claims.

The Court first considers Plaintiff's Motion for Leave to Amend the Amended Complaint [31] and Defendants' collective Motion to Dismiss or in the Alternative Motion to Strike Plaintiff's Second Amended Complaint [27]. After resolving these motions, the Court considers each Defendant's Motion to Dismiss.

## Discussion

### I.      Preliminary Matters

As a threshold matter, the Court notes that Defendant Yearwood has been dismissed from this action by stipulation.  (Stip. of Dismissal, Dkt. No. [16].)  Accordingly, Defendant Yearwood's Motion to Dismiss [4] is **DENIED as moot.**

Furthermore, the filing of Plaintiff's Amended Complaint [10] rendered moot the other Defendants' original Motions to Dismiss.  Accordingly, Defendant Barrow County's Motion to Dismiss [4], Defendant Smith's Motion to Dismiss [6], and Defendant Harris's Motion to Dismiss [8] are likewise **DENIED as moot**.

8

## II.    Plaintiff's Motion for Leave to Amend [31][4]

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f).  Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend.  Rule 15(a)(2) directs the Court, however, to "freely give leave when justice so requires."  Despite this instruction, however, leave to amend is "by no means automatic."  Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979).[5]  The trial court has "extensive discretion" in deciding whether to grant leave to amend.  Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999).  A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile."  Id.  A claim is futile

---

[4] As stated above, Plaintiff styles this Motion, "Motion to Allow Plaintiff to Amend His Complaint if this Court Find [*sic*] that Defendants' Motion to Dismiss Have Any Merit."  The Court treats this Motion as a motion for leave to amend.

[5] In Bonner v. City of Prichard, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.  661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

if it cannot withstand a motion to dismiss.  Fla. Power & Light Co. v. Allis

Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir.1996); see Burger King Corp. v.

Weaver, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way of saying

"inadequacy as a matter of law").  That is, leave to amend will be denied  "if a

proposed amendment fails to correct the deficiencies in the original complaint

or otherwise fails to state a claim."  Mizzaro v. Home Depot, Inc., 544 F.3d

1230, 1255 (11th Cir. 2008).

The Court finds Plaintiff's proposed Second Amended Complaint to be

futile.  Plaintiff explains the purpose of the proposed amendment as follows: "to

supplement his Amended Complaint as to the issues of waiver of sovereign

immunity for Defendants Barrow County and Smith pursuant to liability

insurance purchased by them and his claims against Harris . . . ."  (Dkt. No. [26]

at 1.)  The allegations raised in this proposed amendment are vague, conclusory,

and largely redundant of the claims raised in the Amended Complaint.  Plaintiff

repeatedly asserts that Barrow County and the other Defendants have waived

their sovereign immunity to the extent they maintain liability insurance policies,

yet fails to point to any constitutional or statutory source of this purported

waiver.  Furthermore, as discussed below in Part IV.C., although a Georgia

10

statute does provide for waiver of sovereign immunity against claims arising out of the negligent use of a motor vehicle to the extent a county has liability insurance covering such claims, this provision is wholly inapplicable in this case.

In sum, the vague and conclusory allegations of the proposed Second Amended Complaint fail to correct Plaintiff's failure to plead waiver of sovereign immunity and fail to otherwise state a claim against Defendant Harris.  Accordingly, the proposed amendment is futile, and the Court **DENIES** Plaintiff's Motion for Leave to Amend [31].

## III.   Defendants' Motion to Dismiss or in the Alternative Motion to Strike Plaintiff's Second Amended Complaint [27]

In light of the Court's denial of Plaintiff's Motion for Leave to Amend [31], Defendant's Motion to Dismiss or in the Alternative Motion to Strike Plaintiff's Second Amended Complaint [27] is **DENIED as moot**.

## IV.   Barrow County's Motion to Dismiss Amended Complaint [17]

### A.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to

11

relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  Furthermore, the court does not "accept as

12

true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

In this case, and as stated in the Background section, <u>supra</u>, Plaintiff brings claims against Defendant Barrow County under both federal and state law arising out of Plaintiff's arrest and his subsequent deprivation of medical treatment.  Utilizing the framework articulated above, the Court considers Barrow County's Motion to Dismiss, first as to Plaintiff's federal law claims and then as to his claims arising under Georgia state law.

B.    <u>Federal Law Claims</u>

In Counts IX and XII of the Amended Complaint, Plaintiff raises claims against Barrow County pursuant to 42 U.S.C. § 1983 for unreasonable seizure and malicious prosecution in violation of the Fourth Amendment, and for denial of medical treatment in violation of the Eighth Amendment.  Defendant Barrow County moves to dismiss these claims on grounds that it cannot be held liable for the conduct of Sheriff Smith or his deputies, as Georgia sheriffs and their deputies act on behalf of the State rather than the county for purposes of Plaintiff's Section 1983 claims.  (Br. in Supp. Def. Barrow County's Mot. to Dismiss Am. Compl. ("Barrow County's Second Brief"), Dkt. No. [17] at 5; Br.

in Supp. Def. Barrow County's Mot. to Dismiss ("Barrow County's First

Brief"), Dkt. No. [4] at 10-13.)[6]  The Court thus considers the standard for

county liability under Section 1983 and whether Barrow County may be held

liable for the conduct of the Sheriff and Deputies being challenged in this case.

1.      **County Liability under Section 1983: Legal Standard**

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must

make a prima facie showing of two elements: (1) that the act or omission

deprived plaintiff of a right, privilege or immunity secured by the Constitution

or laws of the United States, and (2) that the act or omission was done by a

person acting under color of law.'"  <u>Marshall Cnty. Bd. of Educ. v. Marshall</u>

---

[6] In its Brief in Support of its Motion to Dismiss the Amended Complaint [17], Defendant Barrow County incorporates by reference its Brief in Support of its original Motion to Dismiss [4].  The Court refers to these two supporting briefs, respectively, as "Barrow County's Second Brief" and "Barrow County's First Brief."

Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc.

v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).  Local

government units such as counties constitute "persons" subject to suit under

Section 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  At

the same time, however, the Supreme Court "has placed strict limitations on

municipal liability under [Section] 1983."  Grech v. Clayton Cnty., Ga., 335

F.3d 1326, 1329 (11th Cir. 2003).

　　　In this case, Plaintiff seeks to hold Barrow County liable for the allegedly

unconstitutional acts and omissions of Sheriff Smith and his deputies.  In

Monell, the Supreme Court held that "a municipality cannot be held liable

under [Section] 1983 on a respondeat superior theory."  436 U.S. at 691.  On

the contrary, the Court held that local governing bodies, such as counties, can

be sued under Section 1983 only where "the action that is alleged to be

unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's

officers."  Id. at 690.  In other words, to hold a county liable under Section

1983, a plaintiff must show that a county employee or policymaker committed

the constitutional violation, and did so pursuant to an official county policy or

AO 72A
(Rev.8/82)

custom. Id. at 694; Grech, 335 F.3d at 1329. This requirement of a policy or custom "is intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action *for which the municipality is actually responsible*." Grech, 335 F.3d at 1329 n.5 (emphasis in original) (citing cases).

In accordance with the foregoing, Barrow County can be held liable under Section 1983 for the acts or omissions of Sheriff Smith and his deputies only if, first, Sheriff Smith and his deputies acted on behalf of the county, and second, acted pursuant to an official policy or custom of the county. The Court thus undertakes to answer the threshold question of whether the individual defendants acted as county policymakers in this case. If, as Barrow County contends, Sheriff Smith and the deputies are state, rather than county, actors, there would be no basis on which to hold Barrow County liable for their conduct under Section 1983. In this event, Plaintiffs federal law claims would have to be dismissed.

In Manders, the Eleventh Circuit held that whether a sheriff acts on behalf of the state or county is a question that cannot be answered absolutely, but one that, rather, "must be assessed in light of the particular function in

16

which the defendant was engaged when taking the actions out of which liability is asserted to arise."  338 F.3d 1304.  Under this framework, the <u>Manders</u> court held that sheriffs act on behalf of the state, not the county, "in establishing use-of-force policy at the jail and in training and disciplining [their] deputies in that regard . . . ."  <u>Id.</u> at 1305.  In <u>Grech</u>, the Eleventh Circuit similarly concluded that sheriffs are state rather than county policymakers "for [their] law enforcement conduct and policies regarding warrant information" and for "the training and supervision of [their] employees in that regard."  335 F.3d at 1348.  In reaching this particular conclusion, the <u>Grech</u> court noted that an "under Georgia law, counties lack authority and control over sheriffs' law enforcement functions."  <u>Id.</u> at 1332.  Indeed, the <u>Grech</u> court emphasized,

> In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement functions. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law enforcement duties and policies.  Counties also have no role in the training or supervision of the sheriffs' deputies.

<u>Id.</u> at 1336.  <u>See also</u> <u>Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.,</u> 400 F.3d 1313, 1325 (11th Cir. 2005) ("[A sheriff] functions as an arm of the State–not Toombs County–when promulgating policies and procedures

17

governing conditions of confinement of the Toombs County Jail."); <u>Scruggs v. Lee</u>, 256 F. App'x 229, 232-32 ("[W]e conclude that [the Sheriff] . . . is an "arm of the State" . . . in executing the function of establishing policies at the jail for processing arrestees.").

In this case, Plaintiff seeks to hold Barrow County liable under Section 1983 for Plaintiff's allegedly unlawful arrest and for Sheriff Smith's later decision to deny Plaintiff access to medical treatment.  (Am. Compl., Dkt. No [10] ¶¶ 91-91-98.)[7]  The Court must determine whether Barrow County may be held liable on either of these bases, or, in other words, whether Sheriff Smith and his deputies acted on behalf of the State or county when executing these particular functions.

---

[7] In his briefs, Plaintiff appears to concede that Barrow County cannot be held liable under Section 1983 for the deputies' conduct during Plaintiff's arrest; he instead focuses on holding Barrow County liable on the basis of Sheriff Smith's denial of medical treatment to Plaintiff.  (<u>See</u> Pl.'s Resp. to Barrow Cnty.'s Mot. to Dismiss ("Pl.'s First Br."), Dkt. No. [20] at 6; Pl.'s Resp. to Barrow Cnty.'s Mot. to Dismiss Am. Compl. ("Pl.'s Second Br."), Dkt. No. [28] at 8 ("Plaintiff agrees with Defendant up to a point, however, Barrow County is liable to Plaintiff as it relates and concerns the failure to render him medical treatment for his injuries.").)  (Plaintiff's First Brief is incorporated by reference into Plaintiff's Second Brief.)  Out of caution, however, the Court will consider Barrow County's potential liability on the basis of both Plaintiff's arrest and subsequent deprivation of medical attention.

18

### 2.     Plaintiff's Arrest

The Court concludes that the deputies were acting as state actors when they arrested Plaintiff and thus that Barrow County cannot be held liable for any violation of Plaintiff's constitutional rights that may have arisen out of his arrest.  As the Eleventh Circuit emphasized in <u>Grech</u>, counties have no control over the law enforcement functions of sheriffs and their deputies, who, on the contrary, derive their law enforcement authority solely from the State.  Indeed, is settled under Georgia law that a defendant county cannot be held liable for the law enforcement activities of the sheriff or his deputies.  <u>Grech</u>, 335 F.3d at 1337 (citing cases).

Similarly, to the extent Plaintiff seeks to hold Barrow County liable under Section 1983 for Sheriff Smith's alleged failure to properly supervise or train the deputies regarding arrests (<u>see</u> Am. Compl., Dkt. No. [10] ¶ 95), the Court finds this theory of liability to be of no avail.  On the contrary, the Court concludes that Sheriff Smith acts on behalf of the state when he trains and supervises his deputies.  As the Eleventh Circuit explained in <u>Grech</u>, "Counties . . . have no role in the training or supervision of the sheriff's deputies.  Instead, sheriffs exercise authority over their deputies independent from the county.

19

Sheriffs alone hire and fire their deputies." 335 F.3d at 1336.  Barrow County thus cannot be held liable under Section 1983 for any constitutional violation arising out of any failure on the part of Sheriff Smith to train or supervise the deputies in this case.

In sum, Barrow County cannot be held liable under Section 1983 for any violation of Plaintiff's constitutional rights that may have occurred as a result of Plaintiff's arrest.  In conducting arrests, Georgia sheriffs and their deputies act on behalf of the state, not the county.  Having concluded that the actors in this case were not county policymakers, the Court need not analyze the separate question of whether they acted pursuant to a county policy or custom. Plaintiff's Fourth Amendment claims for unreasonable seizure and malicious prosecution against Barrow County therefore fail.

### 3.      Denial of Medical Treatment

The Court finds it to be a closer question whether Sheriff Smith acted as a state or county policymaker when he denied Plaintiff medical treatment, and thus whether county liability under Section 1983 properly may be predicated on this conduct.  Ultimately, however, the Court declines to reach this issue given its conclusion, explained below, that Plaintiff has failed to make a sufficient

20

showing that Sheriff Smith was acting pursuant to an official county policy or custom.

Plaintiff argues that Sheriff Smith was acting as a county policymaker when he denied Plaintiff medical treatment following Plaintiff's arrest.  (Pl.'s Second Br., Dkt. No. [28] at 9-12.)  In support of this argument, Plaintiff points to O.C.G.A. § 42-5-2, which obligates counties to provide medical care to inmates in county jails, and Georgia case law holding counties liable to pay for that care.  (Id.)  Under O.C.G.A. § 42-5-2(a), "[I]t shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention . . . ."  Inmate is elsewhere defined as "a person who is detained in a detention facility by reason of being charged with or convicted of a felony, a misdemeanor, or a municipal offense."  Id. § 42-4-30(2).

In accordance with these provisions, the Georgia Court of Appeals has held that the county is liable to pay for the hospital care provided to inmates detained in the county jail, whether the inmate is a prisoner who has been convicted of a crime or a pretrial detainee.  Macon-Bibb Cnty. Hosp. Auth. v.

21

Houston Cnty., 428 S.E.2d 374, 376 (Ga. Ct. App. 1993).  The court further has held that the county is liable to pay for the hospital care of an arrestee as an "inmate," where the arrestee is injured during the arrest and taken directly to a hospital rather than a detention facility.  See Cherokee Cnty. v. North Cobb Surgical Assocs., P.C., 471 S.E.2d 561, 564 (Ga. Ct. App. 1996) ("[W]e hold that Cherokee County is responsible for [the defendant's] medical care because he was injured while being taken into physical custody by the county's sheriff department and who, but for the seriousness of his injuries, would have been placed in the county's detention facilities.").  The fact that the county likely would have been liable to pay for Plaintiff's care, had he received it, weighs in favor of finding Sheriff Smith to be a county policymaker when making decisions regarding Plaintiff's medical care.  See Manders, 338 F.3d at 1309 (noting source of an actor's funds to be a factor that must be considered in determining whether actor is "arm of the State" or county policymaker).

Furthermore, while concluding that a sheriff acts on behalf of the State when establishing the use-of-force policy for the county jail, the Eleventh Circuit in Manders, noting O.C.G.A. § 42-5-2(a), stressed that the plaintiff in that case did not allege that the sheriff denied him medical care or other

22

necessities that the county is statutorily obligated to provide.  338 F.3d at 1323.

The court stated, "We stress that this case does not involve medical care, which

counties have a statutory obligation to provide inmates in county jails."  Id. at

1323 n.43 (citing O.C.G.A. § 42-5-2 and cases).  Manders thus lends support to

the argument that sheriffs do not act on behalf of the state when providing an

arrestee medical care (or, conversely, choosing to deprive him of it).

The aforementioned authority suggests, at least at the motion to dismiss

stage and on the facts alleged in the Amended Complaint, that Sheriff Smith

may have been acting as a county policymaker when he refused to provide

Plaintiff medical treatment following his arrest.  The Court, however, need not

decide this issue.  Even if Sheriff Smith was acting on behalf of Barrow County

when he denied Plaintiff medical treatment, Plaintiff has failed to make a

sufficient showing that Sheriff Smith was acting pursuant to an official county

policy or custom.  This failure is fatal to his Section 1983 claim.

As stated above, to establish county liability under Section 1983 and

Monell, a plaintiff must show that the county policymaker committed the

constitutional violation while executing an official county policy or custom.

436 U.S. 694.  Other than a few conclusory references to the "custom and

policies" of Barrow County,[8] Plaintiff has failed to allege facts to make a

plausible showing that Sheriff Smith's decision to deny Plaintiff medical

treatment was dictated by county policy or custom.  Indeed, the only facts (as

opposed to legal conclusions) Plaintiff has alleged pertain to his experience

alone and not to that of any other similarly situated person.  In the absence of

allegations sufficient to make a plausible showing that it maintained a policy or

custom of denying injured arrestees medical treatment, Barrow County cannot

be held liable under Section 1983 for Sheriff Smith's decision to withhold that

treatment from Plaintiff.  Plaintiff's medical treatment claim therefore fails.

### 4.   Conclusion

In sum, the Court concludes that Barrow County cannot be held liable

under Section 1983 for any violation of Plaintiff's constitutional rights that may

have resulted from Plaintiff's arrest or subsequent deprivation of medical

---

[8] See, e.g., Am. Compl., Dkt. No. [10] ¶¶ 69 ("The custom and policies promulgated by . . . Barrow County and/or Smith . . . were the driving force behind said attack on [Plaintiff]."); 85 ("[Plaintiff] has obtained information and no believes that the Barrow County, . . . Smith, . . . officers and deputies have engaged in a pattern or practice of using excessive force and/or deadly force . . . or denial of medical care to those injured while being incarcerated . . . ."); 93 ("At all relevant times herein, these Defendants acted pursuant to the customs, policies, and practices of . . . Smith . . . [and] Barrow County . . . .").

treatment.  Accordingly, Defendant Barrow County's Motion to Dismiss the

Amended Complaint is **GRANTED** as to Plaintiff's federal law claims

C.      State Law Claims

In the remaining Counts of the Amended Complaint, Plaintiff raises

claims against Barrow County under Georgia state law.  Barrow County moves

to dismiss these claims on the basis of sovereign immunity.  (Def. Barrow

Cnty.'s First Br., Dkt. No. [4] at 14-16; Second Br., Dkt. No. [17] at 9.)  Under

the Constitution of the State of Georgia, "sovereign immunity extends to the

state and all of its departments and agencies," and "can only be waived by an

Act of the General Assembly which specifically provides that sovereign

immunity is thereby waived and the extent of the waiver."  GA. CONST. art. I, §

2, ¶ 9(e).  The Georgia Supreme Court has held that "departments and agencies"

of the State include counties, which are thus entitled to sovereign immunity

from suit in accordance with this constitutional provision.  Gilbert v.

Richardson, 452 S.E.2d 476, 479 (Ga. 1994).  "Sovereign immunity is not an

affirmative defense . . . that must be established by the party seeking its

protection.  Instead, immunity from suit is a privilege that is subject to waiver

by the State, and the waiver must be established by the party seeking to benefit

from the waiver." Forsyth Cnty. v. Greer, et al., 439 S.E.2d 679, 681 (Ga. Ct. App. 1993).

The Court concludes that Plaintiff's state law claims against Barrow County are barred by the doctrine of sovereign immunity, as Plaintiff makes no allegation in the Amended Complaint that Barrow County's sovereign immunity has been waived for purposes of this suit.  As Barrow County argues, the only legislative provision Plaintiff cites in the Amended Complaint is The Georgia Tort Claims Act (the "GTCA"), O.C.G.A. §§ 50-21-20, *et seq.*  While a provision of this Act indeed waives the sovereign immunity of the "state" to a limited extent, id. § 50-21-23, the waiver provision expressly does not apply to counties, which are not included in the statutory definition of "state," id. § 50-21-22(5).  Accordingly, the waiver provision in the GTCA cannot be the basis for Plaintiff's claims in this case.

In his briefs in opposition to Barrow County's Motion to Dismiss, however, Plaintiff vigorously argues that Barrow County's sovereign immunity has been waived to the extent that it maintains a policy of liability insurance. (Pl.'s First Br., Dkt. No. [20] at 10; Pl.'s Second Br., Dkt. No. [28] at 1, 13-14.) Plaintiff contends that under article I, section 2, paragraph 9 of the Georgia

26

Constitution, the defense of sovereign immunity is waived in any action for damages against the State or county for which liability insurance is provided. (Pl.'s Second Br., Dkt. No. [28] at 13.)  This constitutional provision was amended, however, in 1991, to delete the "insurance waiver" clause to which Plaintiff refers.  McElmurray et al. v. Augusta-Richmond Cnty., 618 S.E.2d 59, 64 (Ga. Ct. App. 2005).

The only other provision of which the Court is aware concerning waiver of sovereign immunity and liability insurance is O.C.G.A. § 33-24-51.  This provision waives the sovereign immunity of a county from claims arising out of the negligent use of a motor vehicle, to the extent the county has liability insurance covering such claims.  Id.  Given that none of Plaintiff's claims against Barrow County arise out of the negligent use of a motor vehicle, however, this waiver provision has no relevance in this case.  Having failed to allege any other basis on which the Court could find waiver, the Court concludes that Barrow County is entitled to sovereign immunity from Plaintiff's state law claims.  Accordingly, Barrow County's Motion to Dismiss the Amended Complaint is **GRANTED** as to Plaintiff's state law claims.

**V.     Sheriff Smith's Motion to Dismiss Amended Complaint [18]**

Plaintiff also seeks to hold Sheriff Smith liable, in his official and individual capacities, for the aforementioned violations of federal and state law that allegedly arose out of Plaintiff's arrest and subsequent deprivation of medical treatment.  (Am. Compl., Dkt. No. [10] ¶ 16.)  Sheriff Smith moves to dismiss the official capacity claims on grounds of Eleventh Amendment immunity and state sovereign immunity, and the individual capacity claims on grounds of qualified immunity and official immunity.  (Def. Sheriff Smith's Mot. to Dismiss Compl. ("Sheriff Smith's First Br."), Dkt. No. [6] at 3-5, 5-7.)[9] Utilizing the motion to dismiss standard articulated in Part IV.A., <u>supra</u>, the Court considers these contentions in turn.

A.     <u>Official Capacity Claims</u>

**1.     Federal Law Claims and the Eleventh Amendment**

Plaintiff seeks to hold Sheriff Smith liable in his official capacity, pursuant to 42 U.S.C. § 1983, for the alleged violations of Plaintiff's Fourth and

---

[9] In the Brief in Support of his Motion to Dismiss the Amended Complaint [18], Defendant Sheriff Smith incorporates by reference the Brief in Support of his original Motion to Dismiss [6].  The Court refers to these two submissions, respectively, as "Sheriff Smith's Second Brief" [18] and "Sheriff's Smith's First Brief" [6].

Eighth Amendment rights.  As stated in the Background section, <u>supra</u>, Plaintiff raises claims for unreasonable seizure and malicious prosecution under the Fourth Amendment, and for denial of medical treatment under the Eighth Amendment.  Sheriff Smith contends, however, that he is entitled to immunity in his official capacity from these claims pursuant to the Eleventh Amendment.

As stated above, "In order to prevail in a civil rights action under section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'"  <u>Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th  Cir. 1993) (quoting <u>Bannum, Inc. v. City of Ft. Lauderdale</u>, 901 F.2d 989, 996-97 (11th  Cir. 1990)).  In this regard, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989).

On the contrary, states and their officials are immune from suit under Section 1983 pursuant to the Eleventh Amendment, which, absent

congressional abrogation,[10] "protects a State from being sued in federal court without the State's consent."  Manders, 338 F.3d at 1308.  This Eleventh Amendment immunity from suit in federal court applies not only in suits against a state itself, but also in suits against an "arm of the state."  Id.  In this case, Sheriff Smith contends that he is an "arm of the state," thus entitled to Eleventh Amendment immunity from Plaintiff's federal law claims.

With respect to Plaintiff's Fourth Amendment claims stemming from his arrest, the Court agrees with Sheriff Smith that he is an "arm of the state" entitled to Eleventh Amendment immunity.  As explained above in connection with Barrow County's motion to dismiss (see Part IV.B.2.), when conducting an arrest or supervising or training deputies in that regard, a sheriff executes a classic law enforcement function and thus acts as an "arm of the state." Accordingly, Sheriff Smith is entitled to Eleventh Amendment immunity in his official capacity from Plaintiff's Section 1983 claims for unreasonable seizure and malicious prosecution under the Fourth Amendment–which claims stem from Plaintiff's arrest.

---

[10] Congress did not abrogate Eleventh Amendment immunity for claims brought pursuant to Section 1983. Quern v. Jordan , 440 U.S. 332, 338 (1979).

With regard to Plaintiff's medical treatment claim, however, the Court, as explained above (see Part IV.B.3.), has reservations as to whether Sheriff Smith acted as an "arm of the state." Nonetheless, the Court again need not reach this issue. If Sheriff Smith is properly considered an "arm of the state," he is entitled to Eleventh Amendment immunity from Plaintiff's medical treatment claim. But even if Sheriff Smith was not acting as an "arm of the state" and thus is not entitled to Eleventh Amendment immunity, this claim nonetheless fails.

An action against a government official in his or her official capacity is in reality an action against the government entity the official represents. Brandon v. Holt, 469 U.S. 464, 471 (1985). If Sheriff Smith is properly considered a county actor for purposes of this claim, then Plaintiff's claim against Smith is in reality a claim against Barrow County. Under Monell, and as explained in detail above (see Part IV.B.1.), Barrow County can be held liable under Section 1983 for the constitutional torts of its employees or policymakers only when the tort is committed pursuant to an official county policy or custom. 436 U.S. at 690. Given Plaintiff's failure to plead sufficient facts to make a plausible showing of any county policy or custom of denying arrestees medical care,

31

Plaintiff's claim against the county fails.  For the same reason, his claim against Sheriff Smith in his official capacity would likewise fail.

In sum, irrespective of whether Sheriff Smith acted as a state or county policymaker when he denied Plaintiff medical treatment, Plaintiff's official capacity medical treatment claim necessarily fails.

### 2.    State Law Claims and Sovereign Immunity

Plaintiff also seeks to hold Sheriff Smith liable in his official capacity for various violations of Georgia tort law.  Sheriff Smith contends that he has sovereign immunity from these claims pursuant to the Georgia Constitution.  As stated above in connection with Barrow County's motion to dismiss (see Part IV.C.), the Georgia Constitution extends sovereign immunity to all levels of government, including counties.  Gilbert, 452 S.E.2d at 479.  Because suits against county officials in their official capacities are in reality suits against the county, Brandon, 469 U.S. at 471, a county official sued in his or her official capacity "is entitled to the county's defense of sovereign immunity . . . ." Nichols, 650 S.E.2d at 385.

The Georgia Constitution also provides that sovereign immunity may be waived by an Act of the legislature.  GA. CONST. art. I, § 2, ¶ 9(e).  In this case,

the only legislative provision cited in the Amended Complaint is the GTCA,
which waives the sovereign immunity of the "state" to a limited extent.
O.C.G.A. § 50-21-23.  The definition of "state" for purposes of this waiver
provision, however, expressly excludes counties.  Id. § 50-21-22.  Accordingly,
the waiver of sovereign immunity found in the GTCA does not apply to claims
against counties or their officials when sued in their official capacities.

In this case, Plaintiff's state law claims against Sheriff Smith in his
official capacity are in reality claims against Barrow County, as Sheriff Smith is
a county employee.  Nichols, 650 S.E.2d at 384.  This is true notwithstanding
the Court's analysis of whether Sheriff Smith is properly considered an "arm of
the state" for purposes of Plaintiff's Section 1983 claims.  Indeed, the Georgia
Court of Appeals has explained that while Sheriffs, under certain circumstances,
may be characterized as state actors for purposes of liability under Section
1983, for purposes of liability under state law, sheriffs are officials of the
county.  See id. ("[D]epending on the circumstances, sheriffs may be deemed
state agents for the purpose of determining liability for constitutional violations
under § 1983. . . .  [However,], under the plain language of the Georgia

33

Constitution[11] and the GTCA, sheriffs are county officials, not state officers or employees.").  Accordingly, because the GTCA's waiver provision does not apply to counties, and because Plaintiff has failed to allege any other basis on which the Court could find waiver, Plaintiff's state law claims against Sheriff Smith in his official capacity are barred by the doctrine of sovereign immunity.[12]

> ### B.     Individual Capacity Claims

In addition to his official capacity claims, Plaintiff seeks to hold Sheriff Smith liable in his individual capacity for the violations of federal and state law that allegedly stem from Plaintiff's arrest and deprivation of medical treatment. Sheriff Smith moves to dismiss the federal law claims on grounds of qualified immunity and the state law claims on the basis of official immunity.  The Court considers these contentions in turn.

_____

[11] The Georgia Constitution expressly provides that sheriffs are "county officers."  GA. CONST. art. IX, § 1, ¶ 3(a)-(b).

[12] The Court again notes that the GTCA is the only legislative provision cited in the Amended Complaint that has a provision on waiver of sovereign immunity. Although Plaintiff argues generally in his briefs that Barrow County has waived its sovereign immunity to the extent it maintains liability insurance, O.C.G.A. § 33-24-51, which waives the immunity of counties in cases involving the negligent use of motor vehicles to the extent of liability insurance covering such claims, does not apply in this case.

## 1.     Federal Law Claims and Qualified Immunity

As stated above, Plaintiff raises three Section 1983 claims against Sheriff

Smith in his individual capacity: malicious prosecution and unreasonable

seizure under the Fourth Amendment and denial of the right to medical care

under the Eighth Amendment.  (Am. Compl., Dkt. No. [1] at 29-34, 38-39.)

The doctrine of qualified immunity, however, protects government officials

performing discretionary functions from being sued in their individual

capacities.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  Officials are shielded

"insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Harlow

v. Fitzgerald, 457 U.S. 800, 818 (1982).

"To receive qualified immunity, a government official first must prove

that he was acting within his discretionary authority."  Cottone v. Jenne, II, 326

F.3d 1352, 1357 (11th Cir. 2003).  Once the government official has satisfied

this initial burden, the burden shifts to the plaintiff to show that the official is

not entitled to qualified immunity.  Id. at 1358.  The latter analysis is governed

by a two step test.  Id.  First, the court addresses the "threshold question" of

whether the facts as alleged, viewed in the light most favorable to the plaintiff,

35

establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

Only if there is a constitutional violation does the court proceed to the second

step to determine whether that constitutional right was clearly established.  Id.

A constitutional right is clearly established "only if its contours are

'sufficiently clear that a reasonable official would understand what he is doing

violates that right.'"  Vaughan v. Cox, 316 F.3d 1210, 1212 (11th Cir. 2003)

(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  While the fact

patterns of prior cases used to show that a right is clearly established need not

be "fundamentally similar" or even "materially similar," the salient question is

whether the law at the time of the alleged violation gave officials "fair warning"

that their acts were unconstitutional.  Holmes v. Kucynda, 321 F.3d 1069, 1078

(11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S.730, 740 (2002)).

The Court concludes that Sheriff Smith was acting within the scope of his

discretionary authority for purposes of Plaintiff's federal law claims such that

the doctrine of qualified immunity applies.[13]  Having reached this conclusion,

---

[13] The Court notes that the question of whether a government official acted
within his discretionary authority for purposes of qualified immunity under Section
1983 is separate and distinct from the question of whether an act is classified as
"discretionary" or "ministerial" for purposes of official immunity under state law.  In
Jordan v. Doe, the Eleventh Circuit noted that "discretionary authority" for purposes

the Court must determine whether Sheriff Smith violated any constitutional right of Plaintiff's, and if so, whether that right was clearly established.  The Court considers Plaintiff's Fourth Amendment claims before turning to his claim for denial of medical treatment.

i.      *Fourth Amendment Malicious Prosecution*

The Court finds that Plaintiff has failed to state a claim for federal malicious prosecution.  "To establish a federal malicious prosecution claim under Section 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures."  Kingsland v. City of Miami, 382 F.3d 1220, 1234.  One of the essential elements of the common law tort of malicious prosecution under Georgia law is that the prosecution terminated favorably to the plaintiff-accused.  Commercial Plastics & Supply Corp. v. Molen, 355 S.E.2d 86, 87 (Ga. Ct. App. 1987).  It is well-settled under Georgia law that "where the termination of the prosecution has been brought about by

of qualified immunity is defined to include "all actions of a government official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority," . . . "whether such actions be characterized as ministerial or discretionary in nature."  38 F.3d 1559, 1566 (11th Cir. 1994).

37

compromise and agreement of the parties, an action for malicious prosecution cannot be maintained." Id. (citation omitted).

In this case, Plaintiff has only alleged that an order of nolle prosequi was entered as to the charges filed against him in Barrow County Superior Court. (Am. Compl., Dkt. No. [10] ¶ 51 n.14.) The District Attorney's Motion to Nolle Prosequi specifically states that there was sufficient probable cause for issuance of the warrant against Plaintiff, but that the case should nonetheless be dismissed given Plaintiff's successful completion of some pretrial program.[14] (Sheriff Smith's First Br., Dkt. No. [6] at 27.) Entry of an order of nolle prosequi, however, does not mean that the prosecution terminated in favor of the plaintiff. See, e.g., Gray v. Dental One Assocs., Inc., 605 S.E.2d 366, 367 (Ga. Ct. App. 2004) ("[W]here the defendant in a criminal prosecution settles with the prosecutor the claim which is the subject-matter in issue, the prosecution, although thereby terminated, is not terminated favorably to the defendant.") (affirming summary judgment in favor of defendant on claim for

[14] The Motion to Nolle Prosequi and Order of Nolle Prosequi attached to Sheriff Smith's First Brief is largely illegible. (Dkt. No. [6] at 27.) Sheriff Smith states that the motion and order were predicated on Plaintiff's successful completion of a "pre-trial diversion program." (Id. at 18.)

AO 72A
(Rev.8/82)

malicious prosecution where only evidence of favorable termination was order of nolle prosequi).  Accordingly, having failed to allege an essential element of malicious prosecution under federal law, Sheriff Smith's motion to dismiss is **GRANTED** as to this claim.

<div align="center">

*ii.*     *Fourth Amendment Unreasonable Seizure*

</div>

Plaintiff claims that his Fourth Amendment right to be free from unreasonable seizure was violated when he was arrested without probable cause and subjected to an unreasonable use of force.  (Am. Compl., Dkt. No. [10] ¶ 96.)  With regard to this claim, it appears to the Court that Plaintiff seeks to hold Sheriff Smith liable in his supervisory capacity only, based on Smith's allegedly negligent hiring, training, and supervision of the deputies.  The Amended Complaint demonstrates that Sheriff Smith was not physically present when Plaintiff was arrested, and in his briefs, Plaintiff argues the following:

> As Plaintiff has plead sufficient facts to show that Smith's policy or custom, failure to train and supervise his officers and deputies, negligent retention and entrustment of his officers and deputies . . . were the moving force and/or causal link to Plaintiff's injuries combined with Smith's ***malicious*** refusal to render Plaintiff the immediate critical medical care in this case makes Smith liable for same [*sic*] . . . ."

<div align="center">

39

</div>

(Dkt. No. [24] at 11 (emphasis in original).)  (<u>See also</u> <u>id.</u> at 16 ("As alleged by

Plaintiff, Smith's *deliberate indifference* was one of the moving forces or the

causal connection behind the *assaults and violations* and Smith's failure to

adequately train and adequately supervise these officers makes him liable under

Section 1983.").)  Indeed, this is also how Sheriff Smith interprets Plaintiff's

Fourth Amendment claims:

> With regard to Plaintiff's alleged violations of his Fourth
> Amendment rights, plaintiff has not articulated a plausible claim of
> direct, personal participation against Defendant Smith in such
> matters. . . .  The question thus becomes whether plaintiff has
> articulated a pleading which satisfies the <u>Twombly</u>-<u>Iqbal</u> standard
> on the basis of a claim of supervisory liability.

(Def. Sheriff Smith's Second Br., Dkt. No. [18] at 5-6.)  Accordingly, the Court

considers Plaintiff's Fourth Amendment claim for unreasonable seizure as one

for supervisory liability only.

### a.    Qualified Immunity & Supervisory Liability

Because Plaintiff's Fourth Amendment claim is asserted against Sheriff

Smith in his capacity as supervisor of the deputies, the Court will

assume–without deciding–that Deputies Arnold and Hunnicutt violated

Plaintiff's Fourth Amendment rights.  The question then becomes whether

40

Sheriff Smith's "supervisory actions" caused the alleged deprivation of those rights.  See Gonzales v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (articulating above methodology for resolving claims of supervisory liability under Section 1983).

The standard for supervisory liability of government officials under Section 1983 is well-settled in this Circuit and cannot be based on the doctrine of respondeat superior.  In Cottone, the Eleventh Circuit Court of Appeals explained,

> It is well settled in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability (citation omitted).
>
> Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional violation (citation omitted).

326 F.3d at 1360.  The requisite causal connection between an official's supervisory actions and the alleged constitutional violation can be established in several ways.  As the Cottone court explained,

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of

41

the need to correct the alleged deprivation, and he fails to do so
(internal quotations and citation omitted).

Alternatively, the causal connection may be established when a
supervisor's custom or policy results in deliberate indifference to
constitutional rights or when facts support an inference that the
supervisor directed the subordinates to act unlawfully or knew that
the subordinates would act unlawfully and failed to stop them from
doing so (internal quotations and citation omitted).

Id. The court further noted, "The standard by which a supervisor is held liable

in his individual capacity for the actions of a subordinate is extremely

rigorous." Id. (citation omitted).

In this case, Plaintiff seeks to establish supervisory liability on the part of

Sheriff Smith based on alleged customs or policies of negligently hiring and

thereafter failing to train or supervise deputies, which customs or policies

allegedly resulted in deliberate indifference to Plaintiff's constitutional rights.

(Am. Compl., Dkt. No. [10] ¶¶ 81, 93-95; Pl.'s First Br., Dkt. No. [24] at 6, 10-

11.) The Court first consider's Plaintiff's failure to train or supervise theory

before turning to his argument regarding negligent hiring.

<div align="center">

1.    Failure to Train or Supervise

</div>

To hold a supervisory official liable under Section 1983 for failing to

train or supervise subordinates, a plaintiff must show that the "failure to train

<div align="center">42</div>

amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the Plaintiff complains." Belcher v. City of Foley, 30 F.3d 1390, 1397 (11th Cir. 1994). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious, . . . such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, . . . and when the failure to train is likely to result in the violation of a constitutional right." Id. at 1397-98 (internal citations omitted). On the other hand, a supervisory official cannot be held liable for the unconstitutional conduct of his subordinates based on failure to train or supervise where the official is not on notice of a need to further train or supervise. Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998). For example, the Eleventh Circuit has held that "a sheriff's department was not liable for a deputy's acts when 'no evidence of a history of widespread prior abuse . . . put the sheriff on notice of the need for improved training or supervision.'" Id. (citing Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990)).

In this case, the Court concludes that Plaintiff has failed to establish supervisory liability on the part of Sheriff Smith based on any failure to properly train or supervise the deputies. As a threshold matter, while Plaintiff makes vague and conclusory allegations of failure to train and supervise, Plaintiff has failed to allege facts making a plausible showing that Sheriff Smith in actuality failed to train or supervise the deputies in this case. Plaintiff does not allege what training or supervision the deputies did receive, if any, or what training or supervision was lacking and needed.

Furthermore, and more importantly, Plaintiff has not alleged, much less with plausibility, that Sheriff Smith knew of a need for further training or supervision. Indeed, Plaintiff fails to allege even a single other incident in which a BCSO sheriff's deputy conducted an unlawful arrest or used excessive force. By failing to allege any other incident of abuse, much less a history of widespread abuse, Plaintiff has failed to show that Sheriff Smith was on notice of a need to further train or supervise. Plaintiff has thus failed to show "the necessary causal connection between [Sheriff Smith] and the unconstitutional conduct at issue for supervisory liability to be imposed." Cottone, 326 F.3d at 1362.

44

<div align="center">2. <u>Negligent Hiring</u></div>

The Court similarly finds Plaintiff's theory of negligent hiring to be of no avail.  The test for establishing supervisory liability based on a hiring decision is also one of "deliberate indifference," or that the hiring official "disregarded a known or obvious consequence" of his or her hiring decision.  <u>Bd. of Cnty. Commsrs. v. Brown</u>, 520 U.S. 397, 410 (1997).  Specifically,

> A plaintiff must demonstrate that the [hiring] decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.  Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

<u>Id.</u> at 411.

Plaintiff plainly has failed to establish that Sheriff Smith acted with "deliberate indifference" to the constitutional rights of others when he hired the deputies in this case.  Apart from alleging in conclusory terms that Sheriff Smith negligently hired the deputies, Plaintiff has alleged no facts whatsoever regarding Sheriff Smith's hiring process or decisions.  More importantly, Plaintiff has failed to allege any fact regarding the backgrounds of the deputies.

<div align="center">45</div>

Thus, Plaintiff has failed to allege any defect in the character of the deputies that Sheriff Smith disregarded or negligently failed to discover.  In the absence of these allegations, Plaintiff has failed to show that Sheriff Smith disregarded a known or obvious risk when he hired the deputies.  Accordingly, this theory of supervisory liability fails.

### b.    Conclusion

Having found that Sheriff Smith did not violate the Fourth Amendment in his supervisory capacity, the Court need not consider the second prong of the qualified immunity test, which asks whether the violated constitutional right was "clearly established."  The Court concludes that Sheriff Smith is entitled to qualified immunity from Plaintiff's claim for unreasonable seizure.  Sheriff Smith's motion to dismiss is accordingly **GRANTED** as to this claim.  <u>See, e.g.</u> <u>id.</u> ("Because the amended complaint fails to allege a constitutional violation committed by the supervisory defendants, we need not reach the 'clearly established law' prong of the qualified immunity inquiry with respect to supervisory liability. . . .  Accordingly, we conclude that defendants . . . are entitled to qualified immunity and the district court erred in failing to grant [their] 12(b)(6) motion to dismiss.").

### iii.     Fourteenth Amendment Denial of Medical Care

Plaintiff also raises a claim against Sheriff Smith in his individual capacity for denial of medical treatment under the Eighth Amendment, seeking to hold him directly liable for his decision to deny Plaintiff medical treatment. (Am. Compl., Dkt. No. [10] ¶ 92.)  Sheriff Smith is correct that as a conceptual matter, the Eighth Amendment does not apply to Plaintiff's claim, as Plaintiff was a pretrial detainee when he allegedly was denied needed medical treatment. It is well-settled that "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).  However, because the same legal standard governs such claims whether brought under the Eighth or Fourteenth Amendment, id., the Court will consider Plaintiff's claim as having been brought properly under the Fourteenth Amendment Due Process Clause.  Furthermore, as the legal standards are the same, "decisional law involving prison inmates [and thus the Eighth Amendment] applies equally to cases involving arrestees or pretrial detainees." Id.

47

The standard for assessing mistreatment claims under the Eighth or Fourteenth Amendment is one of "'deliberate indifference' to a substantial risk of serious harm." Id. at 1490 (citing Farmer v. Brennan, 511 U.S. 825, 828 (1994)). This standard has been defined to have both an objective and subjective component: First, "the plaintiff must show a deprivation that is, objectively, sufficiently serious, which means that the defendants' actions resulted in the denial of the minimal civilized measure of life's necessities." Id. (internal quotation marks omitted). With regard to medical treatment claims, "[a] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention." Youmans v. Gagnon, 626 F.3d 557, 564 (11th Cir. 2010). Second, the plaintiff must show "that the defendant had a sufficiently culpable state of mind," which means one of "deliberate indifference to inmate health or safety." Id. (internal quotation marks omitted). This state of mind is the equivalent of reckless disregard of a substantial risk of serious harm, lying somewhere between negligence on the one hand and purpose or knowledge on the other. Id.

AO 72A
(Rev.8/82)

In this case, Plaintiff alleges that he was severely beaten in the face such that his left eye was swollen shut and "dangerously blood-clotted." (Am. Compl., Dkt. No. [10] ¶ 32, 57.)  He alleges that after this beating, Deputy Arnold drove Plaintiff to the hospital (id. ¶¶ 42-43), suggesting to the Court that those on the scene knew or suspected that Plaintiff was in need of medical attention.  Plaintiff further alleges that he was left in the patrol car, bleeding profusely, for nearly two hours in the back parking lot of the hospital, and that Sheriff Smith prohibited him from receiving treatment by hospital staff. (Id. ¶45.)  Finally, Plaintiff alleges that Sheriff Smith admitted, "By law, I am supposed to take [Plaintiff] in the hospital . . . but I'm not, I'm taking to him to Jail."  (Id. ¶ 47.)

At the motion to dismiss stage, the Court finds these allegations sufficient to show that Plaintiff had a serious medical need to which Sheriff Smith was deliberately indifferent, in violation of the Fourth Amendment Due Process Clause.  The Court further finds that the right violated was clearly established. The "clearly established law" inquiry is intended to probe "whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation the defendant officer confronted*."  Youmans, 626 F.3d at 563 (emphasis in

49

original).  Based on the allegations of the Amended Complaint, Sheriff Smith

himself knew his conduct to be unlawful, as he allegedly admitted that, by law,

he was required to take Plaintiff to the hospital.  The Court further finds

sufficient decisional law to put a reasonable officer on notice that medical

treatment would be legally required given the extent of Plaintiff's injuries.  See,

e.g., Aldridge v. Montgomery, 753 F.2d 970 (11th Cir. 1985) (denying qualified

immunity to defendant who delayed treatment of bleeding cut above detainee's

left eye for two and a half hours).

In light of the Court's conclusion that Sheriff Smith is not entitled to

qualified immunity, his motion to dismiss is **DENIED** as to plaintiff's

individual capacity Fourteenth Amendment claim.

### 2.    State Law Claims and Official Immunity

As set forth in the Background Section, supra, Plaintiff's state law claims

against Sheriff Smith are as follows: (1) False Imprisonment and Kidnapping

(Count I); (2) Aggravated Battery, Aggravated Assault, Assault and Battery

(Count II); (3) "GTCA, Negligence Per Se, Negligence, and Gross Negligence"

(Count III); (4) Gross Negligence (Count IV); (5) Negligent Hiring, Retention,

Training and/or Supervision and Entrustment (Count V); (6) Intentional

Infliction of Emotional Distress (Count VII); (7) Georgia RICO (Count X); and "State TORT claims, GTCA claims, Federal Malicious Prosecution under § 1983" (Count XI).  Sheriff Smith moves to dismiss these claims on the basis of official immunity.

<p style="text-align:center"><em>i.    Official Immunity</em></p>

The state constitutional provision governing official immunity provides as follows:

> [A]ll officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the term "official functions" refers to "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." Gilbert, 452 S.E.2d at 483.  Accordingly, under this definition, the constitutional provision "provides no immunity for ministerial acts negligently

<p style="text-align:center">51</p>

performed or for ministerial or discretionary acts performed with malice or an intent to injure." Id. "It however, does provide immunity for the negligent performance of discretionary acts . . . ." Id. In sum, under Georgia law, "a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or intent to injure." Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003).

As a threshold matter, the Court concludes that Plaintiff has failed to show any actual malice or intent to injure on the part of Sheriff Smith. For purposes of official immunity, "'actual malice' requires a deliberate intention to do wrong, and denotes express malice or malice in fact. It does not include willful, wanton or reckless conduct or implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." Daley v. Clark, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006). In this case, Plaintiff has not alleged any facts suggesting that Sheriff Smith acted with the deliberate intention to harm Plaintiff. Accordingly, Sheriff Smith can be held liable under state law only for the negligent performance of ministerial acts; as to any discretionary acts, in light of Plaintiff's failure to show actual malice, he is entitled to official immunity.

Whether an act is ministerial or discretionary depends on the nature of the act and not the actor's position.  Id. at 380.  "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty."  Id.  By contrast, a discretionary act is one that "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  Id.  Having set out the standard for official immunity, the Court considers Sheriff Smith's motion to dismiss as to each of Plaintiff's state law claims.

ii.    *False Imprisonment and Kidnapping (Count I)*

In Count I of the Amended Complaint, Plaintiff raises claims for false imprisonment and kidnapping against Sheriff Smith, alleging that Sheriff Smith, "individually and/or in concert" with the other Defendants, detained Plaintiff against his will without probable cause or articulable suspicion.  (Am. Compl., Dkt. No. [10] ¶ 64.)  The Court concludes, however, that Sheriff Smith was performing a discretionary act for purposes of Plaintiff's arrest and therefore is entitled to official immunity from these claims.

53

In <u>Reed v. Dekalb County</u>, the Georgia Court of Appeals held that "the decision to effectuate a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the officer." 589 S.E.2d 584, 587 (Ga. Ct. App. 2003). Furthermore, "[e]ven when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies. Absent malice or intent to injure, no liability attaches to the officer's exercise of his lawful discretion even when the decision to effectuate the arrest is flawed." <u>Id.</u> (internal citations omitted). Accordingly, in this case, Sheriff Smith is entitled to official immunity from Plaintiff's claims for false arrest and kidnapping, which claims are predicated on Plaintiff's allegedly unlawful arrest.

### iii.    *Aggravated Battery, Aggravated Assault, Assault and Battery (Count II)*

In Count II of the Amended Complaint, Plaintiff raises claims for aggravated battery, aggravated assault, assault, and battery against Sheriff Smith, alleging that Defendants Deputies Arnold and Hunnicut committed these torts within the scope of their employment and pursuant to a custom or policy promulgated by "Barrow County and/or Smith, individually or in concert."

54

(Am. Compl., Dkt. No. [10] ¶¶ 68-69.)  The Court concludes that Plaintiff has failed to allege facts to make a plausible showing that Sheriff Smith promulgated any custom or policy of violating arrestees' constitutional rights. Accordingly, this claim fails.

          *iv.*     *Gross Negligence (Count IV)*

In Count IV of the Amended Complaint, Plaintiff alleges that Sheriff Smith was grossly negligent in (1) "condon[ing] and ratif[ying]" the "egregious acts" of Defendant Deputies Arnold and Hunnicutt and in (2) denying Plaintiff medical treatment for his injuries.  Under Georgia law, "gross negligence" is defined as the absence of "slight diligence."  O.C.G.A. § 51-1-4. "Slight diligence" is, in turn, defined as "that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances."  Id.

With respect to the first allegation, the Court finds that Plaintiff has failed to allege facts to show, with plausibility, that Sheriff Smith "condoned or ratified" or otherwise participated in Deputies Arnold and Hunnicutt's use of force against Plaintiff.  On the other hand, the Court finds that Plaintiff has stated a claim for gross negligence based on Sheriff Smith's alleged denial of

55

medical treatment to Plaintiff.  The Court further concludes that, at least at the

motion to dismiss stage, Sheriff Smith is not entitled to the defense of official

immunity with respect to this claim.

Under Georgia law, "[p]roviding adequate medical attention for inmates

under defendants' custody and control is a ministerial act by the sheriff and his

or her deputies and does not involve the exercise of discretion to provide

medical care, because medical care is a fundamental right and is not

discretionary in requiring medical care . . . ."  Cantrell v. Thurman, 499 S.E.2d

416, 421 (Ga. Ct. App. 1998) (citing O.C.G.A. §§ 42-4-4(a) and 42-5-2(a)).

Accordingly, the Court of Appeals has held that the act of providing adequate

medical care for inmates is not subject to official immunity.[15]  Id.  Indeed, under

O.C.G.A. § 42-4-4(a), sheriffs have a duty to provide inmates in their custody

medical aid, and under § 42-5-2(a), counties have a duty to pay for it.  (See

discussion in Part IV.B.3, supra.)  Finally, in addition to this express statutory

duty, the Georgia courts have long held that sheriffs owe inmates in their

custody a duty to provide necessary medical aid.  Kendrick v. Adamson, 180

---

[15] By contrast, the decision of what medical aid to provide is discretionary in
nature and thus subject to the defense of official immunity.  Cantrell, 499 S.E.2d at
421.

56

S.E.2d 647, 647-48 (Ga. Ct. App. 1935); Cherokee Cnty., 471 S.E.2d at 563.

As explained in Part IV.B.3., supra, at least at the motion to dismiss stage, Plaintiff has alleged sufficient facts to make a plausible showing that he was an "inmate" in Sheriff Smith's custody and thus to implicate Sheriff Smith's duty to provide him medical attention.  The Court further finds that Plaintiff has alleged sufficient facts to make a plausible showing that Sheriff Smith's breach of this duty constituted "gross negligence."  Indeed, the Court finds that an ordinary person of common sense, no matter how inattentive, would deem it necessary that a person with Plaintiff's injuries receive medical attention.  Finally, the Court finds that Plaintiff has sufficiently alleged causation and damages.  Although Plaintiff has not specifically alleged that his medical condition worsened as a result of his delay in treatment, he has alleged emotional and psychological injuries, which the Court reasonably may infer resulted not only from the alleged beating but also his subsequent deprivation of medical care.  (See Am. Compl., Dkt. No. [10] ¶¶ 53, 61.)  Accordingly, the Court concludes that Plaintiff has stated a claim for gross negligence based on Sheriff Smith's breach of a ministerial duty, for which Sheriff Smith is not entitled to the defense of official immunity.

57

> *v.*     *Negligent Hiring, Retention, Training and/or Supervision*
> *and Entrustment (Count V)*

In Count V of the Amended Complaint, Plaintiff seeks to hold Sheriff

Smith liable for negligent hiring, retention, training and supervision of the

deputies.  Under Georgia law, however, it is well-settled that sheriffs are

entitled to official immunity from claims arising out of their supervision and

training of their deputies.  See Harvey, 581 S.E.2d at 276-77 ("[The Georgia

Court of Appeals] has consistently held that the operation of a police

department, including the degree of training and supervision to be provided its

officers, is a discretionary governmental function as opposed to ministerial . . .

function.").  Accordingly, Sheriff Smith is entitled to official immunity from

the claims in this count.

> *vi.*     *Intentional Infliction of Emotional Distress (Count VII)*

In Count VI of the Amended Complaint, Plaintiff raises a claim for

intentional infliction of emotional distress against Sheriff Smith.  The Court

concludes, however, that this claim fails.  Under Georgia law, a claim for

intentional infliction of emotional distress is composed of four elements: (1)

intentional or reckless conduct, (2) extreme and outrageous conduct, (3) a

causal connection between the wrongful conduct and the emotional distress, and

(4) severe emotional distress.  <u>Jarrard v. United Parcel Service, Inc.</u>, 529 S.E.2d

144, 146 (Ga. Ct. App. 2000).

As Sheriff Smith properly contends, this tort is only actionable under the

most egregious of circumstances.  The Georgia Court of Appeals has explained,

"Liability [for this tort] has been found only where the conduct has been so

outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community."  <u>Yarbrough v. SAS Systems, Inc.</u>, 419 S.E.2d 507, 509

(Ga. Ct. App. 1992).  Plaintiff has plainly failed to allege any conduct on the

part of Sheriff Smith rising to this level; his claim for intentional infliction of

emotional distress therefore fails.

> vii.    *Georgia Rico (Count X)*

In Count X of the Amended Complaint, Plaintiff alleges that "all

Defendants" violated the Georgia Racketeer Influenced and Corrupt

Organizations Act ("RICO").  In Plaintiff's briefs, Plaintiff cites federal law in

support of his RICO claim, but as the Amended Complaint clearly alleges

violations of Georgia RICO, the Court will consider the sufficiency of

Plaintiff's allegations under Georgia RICO law.

Georgia RICO makes it "unlawful for any person, through a pattern of

racketeering activity or proceeds derived therefrom, to acquire or maintain,

directly or indirectly, any interest in or control of any enterprise, real property,

or personal property of any nature, including money." O.C.G.A. § 16-14-4(a).

A "pattern of racketeering activity" means "[e]ngaging in at least two acts of

racketeering activity in furtherance of one or more incidents, schemes, or

transactions that have the same or similar intents, results, accomplices, victims,

or methods of commission or otherwise are interrelated by distinguishing

characteristics and are not isolated incidents . . . ." O.C.G.A. § 16-14-3(8)(A).

In this case, each of Plaintiff's allegations pertains to a single isolated

incident–Plaintiff's own arrest.  Plaintiff has pled no facts that Defendants

engaged in a pattern of criminal activity, as required under Georgia RICO.

Consequently, Plaintiffs' Georgia RICO claim is not plausible and must be

dismissed.

*viii. Counts III and XI: Shotgun Pleadings*

The remaining state law counts, Counts III and XI, are due to be dismissed as impermissible shotgun pleadings. The Eleventh Circuit has clearly established that shotgun pleadings are an unacceptable form of establishing a claim for relief. Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 (11th Cir. 2002). The typical shotgun pleading is one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Id. at 1295. The term also refers to pleadings that are "replete with factual allegations that could not possibly be material to any of the causes of action they assert." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010) (citation omitted). Shotgun pleadings make it difficult to discern which allegations of fact correspond to which defendant or claim for relief. Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). As a result, shotgun pleadings make it difficult if not impossible for defendants to frame a responsive pleading and provide appropriate defenses. Beckwith v. BellSouth Telecomm., Inc., 146 F. App'x 368, 371 (11th Cir.



AO 72A
(Rev.8/82)

2005). They also force the court to sift through the allegations in an attempt to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources." PVC Windoors, Inc., 598 F.3d at 806 n.4 (citation omitted).    Count III is entitled, "GTCA, Negligence Per Se, Negligence and Gross Negligence." (Am. Compl., Dkt. Np. [10] ¶¶ 71-74.) In this Count, Plaintiff alleges that Defendants Sheriff Smith and Captain Harris, among others, "individually and/or in concert" failed to comply with various provisions of Georgia tort law, the Georgia Constitution, and the federal Constitution. (Id. ¶72.) Plaintiff further alleges that "[s]uch violations . . . constitute felonies and, when sounding in tort (i.e., in part, under GTCA) constitute negligence *per se* or negligence or gross negligence and are actionable under, i.e., the GTCA and Georgia Code Title 51." (Id. ¶ 73.) With regard to Georgia tort law, Plaintiff cites eleven separate provisions of the Georgia Code, alleging in wholly conclusory fashion and without factual support that these Defendants are liable for kidnapping, false imprisonment, aggravated battery, aggravated assault, assault, battery, use of deadly force, perjury, false swearing, subornation of perjury or false swearing, and forgery. Plaintiff merely incorporates the preceding allegations of the Amended

Complaint by reference and fails to allege which facts, if any, support which claim for relief.

Count XI, entitled "State TORT claims, GTCA claims, Federal Malicious Prosecution under § 1983," is no different.  Plaintiff incorporates the preceding paragraphs of the Amended Complaint by reference and cites to fourteen sections of the Georgia Code.  Plaintiff fails, however, to allege any claim specifically or to state which facts, if any, support his claims for relief.   These Counts thus constitute classic "shotgun pleadings."

In some cases, the appropriate response to a shotgun pleading is to allow the plaintiff to amend the complaint to provide greater specificity.  The Eleventh Circuit has stated that "where . . . a complaint may not have contained sufficient factual information to allow a responsive pleading to be framed, a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it *when it appears that a more carefully drafted complaint might state a claim upon which relief can be granted*."  Danow v. Borack, 197 F. App'x 853, 856 (11th Cir. 2006) (emphasis added).  Conversely, leave to amend need not be given where an amendment would be futile.  Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999).

The Court finds that dismissal is warranted in this case as to these Counts. Allowing Plaintiff leave to amend would be futile, as even more carefully drafted counts could not state a claim upon which relief could be granted. As to Count III, to the extent Plaintiff seeks to state a claim against Sheriff Smith in his individual capacity under the "GTCA," such claims necessarily would fail as the GTCA has no applicability to these claims. The GTCA "is the exclusive remedy for any tort committed by a *state* officer or employee." Minor v. Barwick, 590 S.E.2d 754, 762 (Ga. Ct. App. 2003) (emphasis added). As discussed in Part IV.C., supra, "state" is defined under the GTCA to expressly exclude counties and "other units of local government." O.C.G.A. § 50-21-22(5). Furthermore, the Georgia Constitution provides that Georgia sheriffs are "county officers." GA. CONST., art. IX, sec. 1, ¶ 3(a). Thus, the Georgia Court of Appeals has held that neither sheriffs nor their employees are "state officers of employees" for purposes of the GTCA. Nichols, 650 S.E.2d at 384. The GTCA is therefore inapplicable to Sheriff Smith and his deputies.[16]

---

[16] The Court further notes that even if the GTCA applied with respect to Plaintiff's claims against Sheriff Smith, Plaintiff has failed to comply with the Act's notice requirements. Under the GTCA, no person may bring a tort claim against the

Additionally, to the extent Plaintiff seeks to predicate a negligence claim on allegations of false imprisonment, kidnapping, assault, aggravated assault, battery, or aggravated battery, such claim necessarily fails as Sheriff Smith is entitled to official immunity from such claims.  (See discussion of Counts I & II, supra.)  Finally, the Court notes there is absolutely no factual support in the record for any claim for perjury, false swearing, subornation of perjury, or forgery.  Accordingly, even if Plaintiff were given leave to amend to provide greater specificity, any negligence claim predicated on these allegations necessarily would fail.

Leave to amend would be similarly futile with respect to Count XI. Although Plaintiff does not specifically allege which claims he is attempting to raise, apart from merely listing sections of the Georgia Code, it appears that this Count is wholly redundant of other Counts of the Amended Complaint. Accordingly, leave to amend will not be granted and dismissal is appropriate.

---

State of Georgia without first giving notice of such claim "in writing within 12 months of the date the loss was discovered or should have been discovered . . . ."  O.C.G.A. § 50-21-26(a)(1).  A copy of this notice is to be attached to the complaint.  Id. § 50-12-26(a)(4).  As Plaintiff has failed to comply with these requirements, he cannot possibly state a claim under the GTCA.

## VI.   Defendant Harris's Motion to Dismiss Amended Complaint [19]

Finally, Plaintiff also seeks to hold Defendant Harris, a former Captain in

the BCSO (Am. Compl., Dkt. No. [10] ¶ 10), liable for the alleged violations of

federal and state law that stemmed from his arrest and deprivation of medical

treatment.  Again, as with Sheriff Smith, Plaintiff seeks to hold Defendant

Harris liable in both his official and individual capacities.  Most of the analysis

of Defendant Harris's Motion to Dismiss mirrors that of Sheriff Smith's

motion, as the same legal principles governing official capacity claims and

individual capacity immunities apply to both motions.  Accordingly, the Court

refers to its analysis of Sheriff Smith's motion where applicable.  Utilizing the

motion to dismiss standard articulated in Part IV.A., <u>supra</u>, the Court first

considers Plaintiff's official capacity claims before turning to the individual

capacity claims.

### A.   Official Capacity Claims

#### 1.   Federal Law

Plaintiff raises the same federal law claims against Defendant Harris as

he does against Sheriff Smith: first, for malicious prosecution under the Fourth

Amendment; second, for unreasonable seizure under the Fourth Amendment;

and finally, for denial of medical treatment under the Fourteenth Amendment.[17]

For the same reasons these claims fail against Sheriff Smith in his official

capacity, they fail against Defendant Harris.  (See discussion at Part V.A.1.,

supra.)

To summarize: As an employee of the Sheriff, Defendant Harris acted as

an "arm of the state" for purposes of Plaintiff's Fourth Amendment claims,

which claims arise out of Plaintiff's arrest.  He is therefore entitled to Eleventh

Amendment immunity from these claims.  With regard to Plaintiff's medical

treatment claim, although the Court expressed some ambivalence as to whether

Sheriff Smith–who made the decision to deny Plaintiff medical treatment–acted

as an "arm of the state" or county policymaker for purposes of that decision, the

claim against Defendant Harris necessarily fails.  First, to the extent Sheriff

Smith did act on behalf of the state, he, and, by extension, Defendant Harris, as

Sheriff Smith's employee, would be entitled to Eleventh Amendment immunity.

To the extent Sheriff Smith acted on behalf of the county, the claim against him,

---

[17] In the Amended Complaint, Plaintiff brings his medical treatment claim
under the Eighth Amendment.  As explained above, Plaintiff's claim does not sound in
the Eighth Amendment, and the Court accordingly treats it as having been properly
raised under the Fourteenth Amendment.  (See discussion at Part V.B.1.iii., supra.)

and, by extension, Defendant Harris, in reality would be a claim against Barrow County.  This claim would fail under <u>Monell</u>, given Plaintiff's failure to show a county policy or custom of denying detainees medical treatment.[18]

## 2.    State Law

Similarly, Plaintiff's official capacity state law claims against Defendant Harris fail for the same reasons they fail against Sheriff Smith.  As an employee of the sheriff and thus of the county for purposes of state law, Defendant Harris is entitled to invoke the county's defense of sovereign immunity against all state law claims raised against him in his official capacity.  Because Plaintiff has failed to show any waiver of sovereign immunity, it is a complete defense to Plaintiff's official capacity state law claims.  (<u>See</u> full discussion at Part V.A.2., <u>supra</u>.)

---

[18]  Furthermore, the Court notes that Plaintiff has failed to allege sufficient facts to make a plausible showing that Defendant Harris participated in any way in Sheriff Smith's decision to deny Plaintiff medical care.  Accordingly, wholly apart from Eleventh Amendment immunity, Plaintiff's Fourteenth Amendment claim necessarily would fail.  (<u>See</u> discussion at Part VI.B.1.iii., <u>supra</u>, discussing Plaintiff's failure to state a Fourteenth Amendment claim against Defendant Harris.)

B.     Individual Capacity Claims

1.     **Federal Law**

i.     *Fourth Amendment Malicious Prosecution*

As explained in connection with Sheriff Smith's motion to dismiss, Plaintiff has failed to state a claim for malicious prosecution under Section 1983 because he has failed to show termination of the prosecution in favor of Plaintiff. (See Part V.B.1.i., supra.) Accordingly, this claim fails against Defendant Harris in his individual capacity.

ii.     *Fourth Amendment Unreasonable Seizure*

Plaintiff claims that his Fourth Amendment right to be free from unreasonable seizures was violated when he was arrested without probable cause and subjected to an excessive use of force. (Am. Compl., Dkt. No. [10] ¶ 96.) Defendant Harris moves to dismiss these claims on grounds of qualified immunity. (Def. Harris's Mot. to Dismiss ("Def. Harris's First Br."), Dkt. No. [8] at 3-5.) As a threshold matter, the Court concludes that Defendant Harris was acting within his discretionary authority when the events being challenged took place. Accordingly, as explained in connection with Sheriff Smith's motion to dismiss (see Part V.B.1., supra), Defendant Harris is entitled to

69

qualified immunity from Plaintiff's Fourth Amendment claims unless Plaintiff can show that Harris violated a clearly established constitutional right.

With regard to the false arrest claim, Plaintiff does not allege that Defendant Harris personally arrested Plaintiff or ordered or encouraged Defendant Deputies Arnold or Hunnicutt to do so.  On the contrary, Plaintiff alleges that Defendant Harris arrived on the scene after Plaintiff had been seized by Deputies Arnold and Hunnicutt, and that after arriving, he did not "ascertain[] what had transpired."  (Am. Compl., Dkt. No. [10] ¶ 38.)  Similarly, the allegations of the Amended Complaint make clear that Defendant Harris arrived on the scene after the alleged use of excessive force by Deputies Arnold and Hunnicutt.  (Am. Compl., Dkt. No/ [10] ¶ 34.)

In his briefs, Plaintiff appears to argue that Defendant Harris is liable in his supervisory capacity for Deputies Arnold and Hunnicutt's alleged false arrest and excessive use of force, based on a theory of negligent training and supervision.  (See, e.g., Pl.'s Resp. to Harris's Mot. to Dismiss ("Pl.'s First Br."), Dkt. No. [25] at 1 ("Harris is liable to [Plaintiff] in his individual capacity for . . . the negligent training, retention and supervision of Arnold and Hunnicutt . . . .").)  This claim fails for the same reason it fails as against Sheriff

70

Smith.  As explained in Part V.B.1.ii., supra, to hold a supervisory official liable under Section 1983 for failure to train or supervise subordinates, a plaintiff must show that the failure amounts to deliberate indifference to the rights of third parties.  Belcher, 30 F.3d at 1397.  Deliberate indifference, in turn, can only be established where the supervisory official is on notice of a need for further training or supervision.  Id. at 1397-98.  In this case, Plaintiff has failed to allege sufficient facts to make a plausible showing that Defendant Harris in fact failed to train or supervise Deputies Arnold and Hunnicutt.  More importantly, he has failed to allege any facts to show that Defendant Harris was on notice of a need for further training or supervision.  In light of these failures, Plaintiff has not shown deliberate indifference on the part of Defendant Harris and therefore has failed to show any constitutional violation.  Accordingly, the Court need not undertake the "clearly established" law prong of the qualified immunity test and concludes that Defendant Harris, like Sheriff Smith, is entitled to qualified immunity from Plaintiff's supervisory capacity claims.

With regard to the excessive force claim, Plaintiff also seeks to hold Defendant Harris directly liable for his alleged use of his taser gun.  (Pl.'s First Br., Dkt. No. [25] at 7 ("Harris is liable . . . for his own acts and omissions . . .

by further terrorizing Plaintiff and his family with his taser gun (unjustified use of force and excessive use of force in this case) . . . .").) As stated in the Background section, <u>supra</u>, Plaintiff alleges that once Defendant Harris arrived on the scene, he withdrew his taser gun, ordered everyone away from Plaintiff, and threatened to taser Plaintiff if he did not remain on the ground and those around Plaintiff if they did not move away. (Am. Compl., Dkt. No. [10] ¶¶ 37-38.) Plaintiff contends this constitutes an excessive use of force in violation of his Fourth Amendment rights.

As a threshold matter, the Court has strong doubt that Harris's threatened use of his taser gun constituted an excessive use of force. <u>See, e.g.</u>, <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing <u>Michenfelder v. Sumner</u>, 860 F.2d 328 (9th Cir. 1988) for proposition that no constitutional violation results where officer merely threatens to use taser, and distinguishing <u>Parker v. Asher</u>, 701 F. Supp. 192, 195 (D. Nev. 1988), where court found threatened use of taser to be excessive force only where threat was made for "malicious purpose of inflicting gratuitous fear"). The Court, however, need not decide this issue. Even assuming the threatened use of the taser constituted excessive force, the Court finds that it was not "clearly established" that such force was

excessive.  See Floyd v. Corder, 426 F. App'x 790, 791-92 (11th Cir. 2011)

("[E]xisting law at the time of the incident did not put [the defendant Deputy

Sheriff] on notice that *deploying his taser three times* to subdue a noncompliant

suspect where the underlying crime was minor and *where no violence had*

*occurred* violated [the plaintiff's] constitutional rights.") (emphasis added).  In

light of the holding in Floyd, it cannot be said that the mere threat of using a

taser following what was a chaotic and allegedly violent arrest was clearly

established to be unconstitutional.  Accordingly, Defendant Harris is entitled to

qualified immunity from Plaintiff's excessive force claim predicated on his

threatened use of the taser.

       *iii.*    *Fourteenth Amendment Denial of Medical Care*

Finally, Plaintiff seeks to hold Defendant Harris liable under Section

1983 in his individual capacity for Sheriff Smith's decision to deny Plaintiff

medical care.  In his brief, Plaintiff explains his theory of liability against

Defendant Harris as being that Harris "fail[ed] to insist that Plaintiff receive

proper and immediate medical care."  (Pl.'s First Br., Dkt.No. [25] at 1.)

Plaintiff elaborates that Defendant Harris "should have called for an

ambulance" and that he, "under color of law, refused and never provided [Plaintiff] any medical care." (Id. at 8.)

The Court finds that Plaintiff has failed to show a constitutional violation on the part of Defendant Harris and that Harris therefore is entitled to qualified immunity. As explained in Part IV.B.1.iii., supra, in connection with Sheriff Smith's motion to dismiss, to state a claim for denial of medical treatment under the Fourteenth Amendment, a plaintiff must show "deliberate indifference" to a substantial risk of serious harm. Cotrell, 85 F.3d at 1490. "Deliberate indifference" requires a showing of reckless disregard of a substantial risk, and thus denotes a state of mind that is more culpable than negligent but not necessarily purposeful or knowing. Youmans, 626 F.3d at 564.

Based on the allegations in the Amended Complaint, the Court finds that Plaintiff has failed to implicate Defendant Harris in the decision to deny Plaintiff medical care. On the contrary, Plaintiff specifically alleges that it was Sheriff Smith who "took charge of the situation" at the hospital and made the unilateral decision to deny Plaintiff treatment. (Am. Compl., Dkt. No. [10] ¶¶ 45-46.) Plaintiff alleges no fact suggesting that Defendant Harris had any involvement in this decision, and on the contrary, alleges it was Defendant

Harris who told Plaintiff's family that Plaintiff would be transported to a hospital, (id. ¶ 43).  Thus, the allegations in the Amended Complaint refute the conclusory allegation in Plaintiff's brief that Harris "refused" Plaintiff medical care.

Furthermore, to the extent Plaintiff seeks to establish liability based on Defendant Harris's alleged failure to "insist" that Plaintiff receive treatment, Plaintiff also fails to state a claim under the Fourteenth Amendment.  Even assuming arguendo that Defendant Harris could have done more and had a duty to do more, based on the allegations of the Amended Complaint, his failure to do so is at most negligent and does not rise to the level of "reckless indifference."  Having failed to show that Defendant Harris played any role in Sheriff Smith's decision to deny Plaintiff medical care, and having failed to otherwise show "reckless indifference" to Plaintiff's health, Plaintiff has failed to show any constitutional violation on the part of Defendant Harris.  Accordingly, Defendant Harris is entitled to qualified immunity from Plaintiff's Fourteenth Amendment claim.

AO 72A
(Rev.8/82)

### 2.    State Law Claims

Having dismissed Counts III and XI of the Amended Complaint as impermissible shotgun pleadings (see Part V.B.2, supra), the remaining state law claims against Defendant Harris are as follows:  (1) False Imprisonment and Kidnapping (Count I); (2) Aggravated Battery, Aggravated Assault, Assault and Battery (Count II); (3) Gross Negligence (Count IV); (4) Intentional Infliction of Emotional Distress (Count VII); and (5) Georgia RICO (Count X). Defendant Harris moves to dismiss on grounds of official immunity.

The Court finds that Plaintiff's state law claims are barred by the doctrine of official immunity.  As explained above, public officials or employees are entitled to immunity from suit for the negligent performance of discretionary acts; they may be held liable only for ministerial acts negligently performed or for discretionary acts performed with malice or intent to injure.  Harvey, 581 S.E.2d at 276.  The Court concludes that all of Defendant Harris's acts were discretionary in nature.  Because Plaintiff has failed to allege any malice or

intent to injure on the part of Harris, he is entitled to official immunity from all

of Plaintiff's state law claims.[19]

### Conclusion

In accordance with the foregoing, Defendants Yearwood and Barrow

County's Motion to Dismiss [4], Defendant Smith's Motion to Dismiss [6], and

Defendant Harris's Motion to Dismiss [8] are **DENIED as moot**.

Plaintiff's Motion to Allow Plaintiff to Amend His Complaint If This

Court Find [*sic*] that Defendants' Motions to Dismiss Have Any Merit

("Plaintiff's Motion for Leave to Amend") [31] is **DENIED**.  Defendants

Smith, Arnold, Hunnicutt, Harris, and Barrow County's Motion to Dismiss or in

the Alternative Motion to Strike Plaintiff's Second Amended Complaint [27] is

**DENIED as moot**.

Finally, Defendant Barrow County's Motion to Dismiss the Amended

Complaint [17] is **GRANTED**.  Sheriff Smith's Motion to Dismiss the

Amended Complaint [18] is **GRANTED in part and DENIED in part**.  The

motion is **DENIED** only as to Plaintiff's individual capacity Fourteenth

---

[19] Furthermore, as explained in connection with Sheriff Smith's motion to dismiss, the Court finds that Plaintiff has plainly failed to state a claim for intentional infliction of emotional distress and under Georgia Rico.  (See Part IV.B.2., supra.)

Amendment denial of medical treatment claim (Count IX) and individual capacity gross negligence claim (Count IV).  The motion is **GRANTED** as to all other claims and counts.  Defendant Harris's Motion to Dismiss the Amended Complaint [19] is **GRANTED**.  Accordingly, the Court hereby **DISMISSES** Defendants Barrow County and Harris from this suit.

      **SO ORDERED**, this _ 15th _ day of February, 2012.


**RICHARD W. STORY**
United States District Judge

78